IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TIMOTHY M. FRYE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-24-2839 |
| N. WEBSTER, et al., | * | |
| Defendants. | * | |

\*\*\*
**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant N. Webster's Motion to Dismiss (ECF No. 15).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant Webster's Motion in part and deny it in part.

## I.    BACKGROUND

**A.    Factual Background[2]**

This civil rights action arises from events that allegedly took place while self-represented Plaintiff Timothy Frye was housed as a pretrial detainee at the Harford County Detention Center ("HCDC"). (Compl. at 4–5, ECF No. 1).[3] Frye alleges that in the early morning on September 25, 2024, N. Webster, a corrections deputy at HCDC, woke him up

---

[1] Self-represented Plaintiff Timothy Frye also has filed several miscellaneous motions. (See ECF Nos. 26, 29, 38, 39). The Court will address each in turn.
[2] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).
[3] Unless otherwise noted, citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

by yelling "finger stick" into his cell. (Mem. Supp. Mot. Dismiss Am. Compl. ["Mot. Dismiss"] at 1, ECF No. 15-1; Suppl. Compl. at 2, ECF No. 6).[4] Frye responded that he does not get a finger stick and refused the request. (Suppl. Compl. at 2). Webster told Frye to stand up and to accept the finger stick. (Id.). Frye stood up, walked outside his cell, refused again, and stated that he does not receive a finger stick for insulin. (Compl. at 5; Suppl. Compl. at 2). Both Webster and the medical staff member, now identified as Defendant Kelvin Edokpolo, LPN, demanded that Frye provide his hand for the finger stick. (Suppl. Compl. at 2). Frye alleges that he presented his hand, against his will, to avoid receiving a disciplinary ticket for refusing a direct order. (Id.). Edokpolo then punctured Frye's right pointer finger with a needle to draw blood. (Id.).

---

[4] On October 4, 2024, the Court received additional documents from Frye, dated September 25, 2024. (ECF No. 6). He states the documents were intended to accompany his Complaint, but he had insufficient postage to include them with the initial mailing. (Suppl. Compl. at 1, ECF No. 6). The Court construed and docketed the additional pages as a Supplement to the Complaint. Webster argues that the Supplement is more appropriately considered an amended complaint. (Mot. Dismiss at 1–2). The Court, however, has discretion to allow supplemental pleadings, Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002) (instructing that leave to supplement "should be freely granted" and warrants denial only where there is a "good reason" for doing so (citation omitted)), and construes Frye's pleadings liberally due to his is self-represented status, see Pardus, 551 U.S. at 94. The Court received Frye's Supplement just four days after his initial Complaint, and the Court accepts Frye's stated reason for the delay (i.e., insufficient postage). (Suppl. Compl. at 1). While the Supplement is not a model of clarity, it provides information consistent with the Complaint and does not add claims or parties. (See generally id.). Further, Webster was served simultaneously with both the Complaint and the Supplement. (See Apr. 7, 2025 Order at 4, ECF No. 12). Therefore, there is no prejudice in allowing the Supplement at this early stage in the proceedings. Tafah v. Lake Vill. Townhomes, No. BAH-25-1408, 2026 WL 124306, at *2 (D.Md. Jan. 16, 2026) ("The general rule is supplementation of pleadings is favored and should be granted absent futility, undue delay, bad faith, dilatory tactics, or unfair prejudice to the party to be served with the proposed pleading.").

Frye states that he verbally complained of these events to medical and mental health staff and that he filed grievances against "medical" and a "staff member" of HCDC but received "no result." (Compl. at 8–9, 11; Suppl. Compl. at 4, 6). Frye further states that he mailed his Complaint to this Court on September 26, 2024, before filing his grievance against "medical," so that HCDC would not intercept his mail to the Court once their alleged wrongdoing was exposed. (Compl. at 9).

**B.     Procedural Background**

The Court received Frye's Complaint on September 30, 2024, and the Supplement to the Complaint on October 4, 2024. (ECF Nos. 1, 6). He brings claims under 42 U.S.C. § 1983 for alleged violations of his rights under the Eighth and Fourteenth Amendments of the U.S. Constitution, and he brings state-law claims of negligence and medical malpractice. (Compl. at 3, 5–7). On April 7, 2025, the Court ordered service of the Complaint and Supplement on Webster and Defendant "Unknown Nurse." (ECF No. 12). On June 6, 2025, Webster filed a Motion to Dismiss. (ECF No. 15). Frye filed an Opposition on August 15, 2025. (ECF No. 21). To date, Webster has not filed a Reply.[5]

Beginning on November 13, 2025, the Court issued a series of Orders directed at both Wellpath, LLC—the healthcare company that provides care to inmates at HCDC (Mot. Dismiss at 2)—and Webster to provide information to Frye to assist him in

---

[5] Frye filed a Motion for Default Judgment against Webster on October 30, 2025, asserting that he is entitled to default judgment because Webster did not file a Reply to Frye's Opposition to the Motion to Dismiss. (Mot. Default J. at 1–2, ECF No. 26). A party may file a reply within fourteen days of service of the opposition memorandum, but a party is not <u>required</u> to file a reply. <u>See</u> Local Rule 105.2.a. (D.Md. 2025). Default judgment, therefore, is not warranted, and Frye's Motion will be denied.

identifying Defendant "Unknown Nurse," who Frye alleged was employed by Wellpath. (ECF Nos. 27, 28, 32; see also Compl. at 3). On January 9, 2026, based on the information provided, Frye identified the Unknown Nurse as Wellpath employee Kelvin Edokpolo, LPN, and the Clerk updated the docket to reflect this identification. (Pl.'s Notice Identification ["Notice"] at 1, ECF No. 38).[6]

On January 9 and 16, 2026, Frye filed two emergency motions—one seeking Court Review and Immediate Protective Action in other state and federal cases in which Frye is a party (ECF No. 39), and another seeking a Protective Order Regarding Legal Mail Interference, Preservation of Evidence, and Equitable Relief to Protect his Access to the Courts (ECF No. 40). To date, Webster has not filed an Opposition to either Motion.

## II.    DISCUSSION

### A.    Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City

---

[6] In his Notice identifying Edokpolo as the Unknown Nurse, Frye moved to amend the caption to reflect the updated information. (Notice at 2, ECF No. 38). The Clerk replaced Unknown Nurse with Edokpolo's name on the docket in accordance with this Court's January 9, 2026 Order. (Jan. 9, 2026 Order at 3, ECF No. 37). Accordingly, Frye's request to amend the caption will be denied as moot. Additionally, because the Unknown Nurse has been identified, Frye's December 1, 2025 Motion for Partial Summary Judgment, in which he sought a finding that Wellpath was the responsible party in place of the Unknown Nurse, also will be denied as moot. (Mot. Partial Summ. J. at 2, ECF No. 29). The Court will direct service on Edokpolo through local counsel for Wellpath, Courtney R. Abbott, as previously identified. (See Dec. 5, 2025 Status R. at 2, ECF No. 31; Dec. 22, 2025 Status R. at 2, ECF No. 36).

of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Pleadings drafted by self-represented litigants are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007)

5

(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see Spencer v. Earley, 278 F.App'x 254, 259–60 (4th Cir. 2008) ("Dismissal of a pro se complaint . . . for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972))). Nonetheless, "liberal construction does not absolve Plaintiff from pleading a plausible claim." Desgraviers v. PF Frederick, LLC, 501 F.Supp.3d 348, 351 (D.Md. 2020) (quoting Bey v. Shapiro Brown & Alt, LLP, 997 F.Supp.2d 310, 314 (D.Md. 2014)).

**B.   Analysis**

Webster asks this Court to dismiss the Complaint and Supplement because (1) Frye failed to exhaust available administrative remedies pertaining to his federal claim; (2) Frye failed to state a viable state law claim, and the Court lacks jurisdiction over such claims in any event; (3) Webster's conduct was not a violation of Frye's constitutional rights; and (4) any alleged violation of Frye's constitutional rights was de minimis, and Frye has not alleged actual damages. (Mot. Dismiss at 4–10). For the reasons below, the Court will grant the Motion to Dismiss as to Frye's federal claims, but not his state claims, against Webster.

**1.   Exhaustion**

The Court first addresses Webster's exhaustion defense. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, if Frye has not yet

exhausted the administrative remedies available for presentation of his claims, his claims must be dismissed under the PLRA.

For purposes of the PLRA, the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Chase v. Peay, 286 F.Supp.2d 523, 527 (D.Md. 2003) (finding that "the exhaustion provision" of the PLRA "plainly extends" to suits regarding prison conditions), aff'd, 98 F.App'x 253 (4th Cir. 2004).

Exhaustion under § 1997e(a) is mandatory—a plaintiff must exhaust his available administrative remedies before a court can hear his claim. See Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA . . . ."); Ross v. Blake, 578 U.S. 632, 638 (2016) (finding that "a court may not excuse a failure to exhaust"). Administrative exhaustion under § 1997e(a), however, is not a jurisdictional requirement and does not impose a heightened pleading requirement on the detainee. Jones, 549 U.S. at 215–16. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. See id.; Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017). The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." Custis, 851 F.3d at 362 (citing Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008)).

To exhaust administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006); Moore, 517 F.3d at 725. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford, 548 U.S. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

Failure to exhaust may be excused in cases where the administrative procedure is not available. Ross, 578 U.S. at 642 (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. The Supreme Court identified three circumstances when an administrative remedy is unavailable: when (1) officers are "unable or consistently unwilling to provide relief to aggrieved inmates," (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use," or (3) prison administrators actively "thwart" inmates from filing grievances. Ross, 578 U.S. at 643–44.

Here, the grievances that Frye attached to his Complaint and Supplement are dated September 25, 2024—the same date as the alleged needle stick event and the dates written on the Complaint and the Supplement. (Compl. 5, 11, 16; Suppl. Compl. at 6, 8). Webster argues that Frye did not allow sufficient time for the grievance process to take place and that it is apparent from the face of his Complaint and the Supplement that he did not exhaust administrative remedies prior to filing suit. (Mot. Dismiss at 5). This Court agrees.

Viewed in the light most favorable to Frye, the record does not show either that the grievance process was unavailable to Frye or that he exhausted the grievance process. To the contrary, Frye states in his Complaint that he filed his grievance against "medical" on September 27, 2024, the day after he mailed his Complaint to the Court on September 26, 2024. (Compl. at 9). It is not clear whether he did the same with the second grievance filed against a "staff member" (Suppl. Compl. at 6); however, even if Frye filed that grievance on September 25, 2024, he still has not satisfied the exhaustion requirement, because he filed his Complaint with this Court on the same day and, therefore, did not complete the grievance process or give HCDC "a fair opportunity to consider [his] grievance" before he filed his Complaint. Woodford, 548 U.S. at 94 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."); Chase, 286 F.Supp.2d at 530 ("The exhaustion requirement under the PLRA has been interpreted to require prisoners to pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process.").

The Court also notes that Frye failed to respond to the exhaustion defense. (See generally Pl.'s Opp'n Def.'s Mot. Dismiss, ECF No. 21). "As numerous courts in the Fourth Circuit repeatedly have held, a litigant's failure to address arguments in responding to dispositive motions amounts to a concession of such arguments." Lovess v. PennyMac Loan Servs., LLC, No. BAH-25-00515, 2025 WL 2049986, at *2 (D.Md. July 22, 2025) (quoting Herbert v. McCall, Civ. No. 23-6242, 2024 WL 4276995, at *3 (D.S.C. Aug. 9, 2024)); see also Evans v. City of Lynchburg, 766 F.Supp.3d 614, 618 (W.D.Va. 2025)

("Failure to respond to conspicuous, nonfrivolous arguments in an opponent's brief constitutes a waiver of the corresponding claims."). Thus, Frye's failure to address Webster's exhaustion defense constitutes a concession to that defense.

At bottom, Frye has failed to exhaust his administrative remedies or respond to Webster's exhaustion defense and, therefore, his federal claims against Webster will be dismissed under the PLRA.

### 2. State Law Claims

Next, Webster argues that Frye fails to state a claim for negligence or medical malpractice against Webster and that the Court lacks jurisdiction over such claims. (Mot. Dismiss at 6–7). The Court finds that it does have jurisdiction over these claims and declines to dismiss them at this time due to Webster's failure to present a sufficient legal analysis demonstrating Frye's failure to state a claim.

As to Webster's jurisdictional argument, federal courts have original jurisdiction over civil cases, with some exceptions, only in two instances: (1) under federal question jurisdiction, where the case involves an issue of federal law, see 28 U.S.C. § 1331, or (2) under diversity jurisdiction, where the parties in the case are citizens of different states and the amount in controversy exceeds $75,000, see 28 U.S.C. § 1332. Negligence and medical malpractice claims fall under Maryland state law and are not federal claims. See Davidson v. Cannon, 474 U.S. 344, 347–48 (1986). Such claims, however, may be subject to supplemental jurisdiction in federal court when they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). But a district court "may decline to exercise

10

supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see Henderson v. Harmon, 102 F.4th 242, 251 (4th Cir. 2024) (upholding trial court's dismissal of state law claims after granting summary judgment on federal claims.).

Here, although the Court has dismissed the federal claims against Webster (see Subsection II.B.1 above), federal claims remain pending against Edokpolo. (Compl. at 5–7). The federal and state claims in this case all arise from the same set of facts—the alleged needle stick event. (See Compl. at 6–7). In other words, Frye's federal and state law claims "derive from a common nucleus of operative fact . . . such that [Frye] would ordinarily be expected to try them all in one judicial proceeding." Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 615 (4th Cir. 2001) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988)). The Court, therefore, declines to exercise its discretion to dismiss the state law claims against Webster on jurisdictional grounds. Webster may renew his request to dismiss the state law claims based on supplemental jurisdiction if the federal claims against Edokpolo are later dismissed.

Regarding Webster's argument that Frye has failed to state a claim of negligence or medical malpractice, Webster presents no legal analysis in support of the argument that Frye has not pleaded adequately the elements of either claim, and the Court declines to do so on his behalf. (See Mot. Dismiss at 7). Accordingly, the Motion to Dismiss is denied as

11

to Frye's state law claims, and the Court will direct Webster to answer the Complaint and Supplement as to those remaining claims.

C.      **Emergency Motions**

The Court now turns to Frye's emergency motions. (ECF Nos. 39, 40). First, in the Emergency Motion for Court Review and Immediate Protective Action, Frye explains that there is a pending motion in the Circuit Court for Harford County to have Frye declared a "vexatious litigant" and to have "clerks and courts" refuse to accept his filings "across matters." (Em. Mot. Ct. Rev. & Immediate Prot. Action at 2, ECF No. 39). Frye states that a hearing on that motion is scheduled for March 2, 2026. (Id. at 3). Frye asks this Court "to intervene before the March 2, 2026 hearing and to issue appropriate protective relief." (Id. at 4, 6). Specifically, Frye seeks a protective order "prohibiting retaliation, harassment, intimidation, or actions intended to silence or punish [him] for exercising his constitutional right to pursue federal litigation" and other related relief. (Id. at 6).

No motion has been filed in this Court to restrict Frye's filings in this case, and the state court motion Frye describes has no relevance to the pending action. Further, this Court has no authority to "intervene" in the state court action. Such relief is in the nature of a writ of mandamus, which is an extraordinary writ that is only available in cases where no other means by which the relief sought could be granted. In re Beard, 811 F.2d 818, 826 (4th Cir. 1987) (citations omitted). This Court has no jurisdiction to issue a writ of mandamus commanding a state court to entertain (or not entertain) a motion. See Cobb v. Warden, No. GLR-23-2353, 2023 WL 6381441, at *2 (D.Md. Sept. 29, 2023) (citing Gurley v. Superior Ct. of Mecklenburg Cnty., 411 F.2d 586, 587 (4th Cir. 1969)); see also 28 U.S.C.

§ 1361 (stating that federal district courts' mandamus authority extends only to "officer[s] or employee[s] of the United States or any agency thereof"). Accordingly, Frye's Motion will be denied.

Second, in his Emergency Motion for Protective Order Regarding Legal Mail Interference, Preservation of Evidence, and Equitable Relief to Protect Access to the Courts, Frye alleges that prison officials at HCDC and the Eastern Correctional Institution ("ECI"), where he currently resides, have interfered with his receipt of legal mail. (Em. Mot. Protective Order at 1–3, ECF No. 40).[7] Frye states that prison officials have delivered other inmates' legal mail to him and that he has not received legal mail that was intended for him. (Id. at 3). Frye seeks a protective order pertaining to the handling of his legal mail by ECI and its staff, that "where practicable, filings and court orders also be served by alternative means," the use of a PACER account, and equitable tolling of any missed deadlines attributable to documented legal mail interference. (Id. at 4–5).

Frye's request is one for injunctive relief. An injunction is an extraordinary remedy. See Munaf v. Geren, 553 U.S. 674, 689–90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) that the injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555

---

[7] Per Frye's request, this Motion was docketed in three separate cases in this Court. (See Em. Mot. Protective Order at 1, ECF No. 40); see also Em. Mot. Protective Order, Frye v. Smithson, No. SAG-24-2387 (D.Md. Jan. 16, 2026) (ECF No. 99); Em. Mot. Protective Order, Frye v. Hayes, No. JKB-25-162 (D.Md. Jan. 16, 2026) (ECF No. 23).

U.S. 7, 20 (2008); see also The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir. 2009). To demonstrate a likelihood of irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Med. Grp., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. See Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994).

Here, Frye has not alleged any facts showing imminent harm, only suspicions that such interference has occurred and may continue to occur. (See Em. Mot. Prot. Order at 1–3). Moreover, the record does not support Frye's allegations. The content of Frye's numerous filings in this case demonstrates his receipt of the Court's Orders, and the docket does not reflect any missed filing deadlines by Frye. (See, e.g., Mot. Default J. at 1, ECF No. 26 (referring to Court's Orders granting Frye extension to respond to Motion to Dismiss); Mot. Partial Summ. J at 1, ECF No. 29 (listing docket entries, including Court's multiple service Orders); Notice at 1, ECF No. 38 (timely identifying Unknown Nurse in compliance with Court's prior Orders)). Frye, therefore, has failed to show irreparable harm or that any alleged mail practices at HCDC or ECI have prejudiced this action. See Keith v. Merchant, No. 1:13-2721-RMG, 2014 WL 657928, at *4–5 (D.S.C. Feb. 19, 2014) (denying injunctive relief in part because plaintiff failed "to demonstrate any imminent threat to his safety or prejudice to his pending legal actions resulting from Defendants' alleged tampering with legal mail"). The Motion, therefore, will be denied.

### III. CONCLUSION

For the foregoing reasons, the Court will GRANT Webster's Motion to Dismiss (ECF No. 15) as to the federal claims against him and DENY it as to the state claims against him. Webster will be directed to answer the Complaint and Supplement to the Complaint. The Court will DENY Frye's Motions for Default judgment (ECF No. 26), for Partial Summary Judgment (ECF No. 29), to Amend the Caption (ECF No. 38), and for emergency relief (ECF Nos. 39, 40). The Court will direct service on Defendant Edokpolo. A separate Order follows.

Entered this 4th day of February, 2026.

                                                        _____/s/_____
                                                        George L. Russell III
                                                       Chief United States District Judge